IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER ON** |
| Plaintiff, | ) | **SUPPRESSION MOTION** |
| | ) | |
| vs. | ) | Crim. File No. 2:07-cr-64 |
| | ) | |
| Joseph C. Demarce, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is a Motion by Defendant Joseph C. Demarce to suppress the statements he made to law enforcement officials on July 6, 2007 (Doc. #16). The United States opposes the motion (Doc. #26). Oral argument was held on the matter on October 27, 2007, and parties submitted post-hearing briefs (Docs. #31 & 32).

## FACTS

The facts appear to be largely undisputed. To the extent that witnesses' testimony during the suppression hearing differed, the inconsistencies, if relevant, will be addressed in the Court's analysis of the issue.

## DISCUSSION

The fundamental rule of <u>Miranda v. Arizona</u> is that "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." <u>United States v. Griffin</u>, 922 F.2d 1343, 1347 (8th Cir. 1990); <u>Miranda</u>, 384 U.S. 436, 444 (1966). Statements made by a person in custody, even if wholly voluntary, are inadmissible at trial unless law enforcement officers gave the specific warnings and followed the specific procedures set forth by <u>Miranda.</u> <u>Michigan</u>

1

v. Mosley, 423 U.S. 96, 99-100 (1975).

**Custody.**

"Custody" is described as occurring either upon a formal arrest, or under other circumstances in which the defendant's freedom of action is deprived in a significant way. Miranda, 384 U.S. at 444.  The Eighth Circuit Court of Appeals has rejected a strict "purpose, place, and length" test in determining whether a defendant was in custody and instead has identified six "indicia of custody" in order to help make the determination.  Griffin, 922 F.2d at 1349.  The inquiry, which is non-exhaustive, analyzes:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id.  The first three factors are mitigating, and the last three are coercive.  Id.  Whether a person is in custody is determined by examining the totality of the circumstances.  Griffin, 922 F.2d at 1347.

1. *Whether Demarce was informed at the time of questioning that the questioning was voluntary, that he was free to leave or request the officers to do so, or that he was not considered under arrest*.

The record does not reveal that Demarce was specifically told at during the July 6, 2007 questioning that the questioning was voluntary, that he was free to leave the interview, or that he was not under arrest.  It is also clear that the officers made plain to Demarce that they were

2

interested in discussing an alleged sexual assault. While it would have been a much better practice for the officers to have specifically informed Demarce that he was not required to answer questions, that he was free to leave at any time, and that he was not under arrest for the alleged sexual assault, the totality of the circumstances reflect that Demarce was fully aware of these matters. Ten days earlier under nearly identical circumstances, Demarce had indicated to the officers that he "had nothing to say to them," and subsequently terminated the interview and walked out. Given that the instant questioning took place in the same room, with the same officers present, and under nearly identical circumstances, the totality of the circumstances indicate that Demarce was well aware of his right to refuse to submit to questioning and to leave.

2. *Whether Demarce possessed unrestrained freedom of movement during questioning.*

This question is closely related to the first issue. Merely being held in a jail is not a sufficient basis for finding one is "in custody" and that his freedom of movement has been curtailed. Cervantes v. Walker, 589 F.2d 424, 428 (9th Cir. 1978). In a prison or jail situation, the ultimate issue is whether there was a change in the surroundings that resulted in an added imposition on the freedom of movement. Id. Clearly, being incarcerated always involves some significant restriction on one's freedom of movement. The issue presented is, however, more subtle: has there been any change in circumstances or surroundings that reflects some additional limitation of movement? The focus is on the restraint imposed by the government agents. United States v. New, 491 F.3d 369 (8th Cir. 2007) (holding that suspect who was immobile and confined to a hospital bed was not "in custody" during questioning because the questioning agent placed no constraints on the suspect's movement or ability to communicate or otherwise

aggravated the environment).

When Demarce was interviewed on July 6, 2007, he was brought into the same conference room that had been used ten days earlier. Everyone sat in the same place. The door was unlocked. Demarce knew he was free to leave because he had done so on a previous occasion. This is a strong indicator that there was no "in-custody" situation.

3. *Whether Demarce initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions.*

Although Demarce did not initiate contact with Special Agents Wind and Thompson, he voluntarily responded to their questions. Special Agent Wind "asked [Demarce] if [he] was ready to talk or if [he] had anything to say." (Tr. p. 13, Lines 6-7). Demarce responded by asking what he was being charged with (Tr. p. 32, Line 14), and brief discussion followed. Following this exchange, Demarce signed a waiver of rights. Taken as a whole, it appears Demarce voluntarily responded to Special Agent Wind's questions.

4. *Whether strong arm tactics or deceptive stratagems were employed during questioning.*

No "strong arm tactics" or "deceptive stratagems" appear to have been employed. The parties agree Demarce was somewhat emotional during questioning and the Court acknowledges that Special Agent Wind used Demarce's references to being "a monster" as an opening to further discussion; however, the Court does not find that this opportunism amounts to deception.

5. *Whether the atmosphere of the questioning was police-dominated.*

This factor slightly favors a conclusion that Demarce was in custody. Demarce was taken into a the sheriff's conference room within the law enforcement that had two unlocked

doors, one of which opened directly to the sheriff's office.  Two special agents were in the room with Demarce, though neither displayed a weapon.  The agents were known to Demarce.  The room was otherwise more or less empty. Under these circumstances, the law enforcement presence in the room was sufficient to tip this factor slightly in favor of a finding of custody.

6. *Whether Demarce was placed under arrest at the termination of questioning.*

Demarce was not placed under arrest at the termination of questioning.

7. *Other factors.*

The only possible other factor involves Demarce's emotional state at the time of questioning.  The record reflects that he was quite upset and that he became teary when discussing the facts and circumstances.  However, the weight of the evidence does not reflect that he was so emotionally distraught that his will was overborne, or even that the officers should have been concerned that he was in no emotional state to discuss the case.  Very often, interrogations of witnesses and defendants are emotional, but the test is not whether or not the questions are difficult, it is whether or not an emotional state exists such that the person's free will has been overborne by the emotion.  See United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992).  There is no evidence of this in this case.

Weighing all the factors, it is clear that Demarce was not in custody at the time of the statement.  He entered the conference room voluntarily and left freely and on his own volition.  There is no evidence that would sustain a finding that there were restraints on his movement beyond those that are inherent in being in jail.  The tactics used by the agents were not overbearing or deceptive.  Under these circumstances, Demarce was not in custody, Miranda

does not apply, and Demarce's statements may not be suppressed on that basis.

**Invocation of the right to remain silent.**

Even if the Court had concluded Demarce was in custody, his statements would still be admissible because Demarce did not clearly invoke his right to remain silent. The right to remain silent may be invoked by a defendant making a clear and consistent expression of his desire to remain silent. United States v. Ferrer-Montoya, 483 F.3d 565, 569 (8th Cir. 2007) (citing United States v. Thompson, 866 F.2d 268, 272 (8th Cir. 1989)). Merely declining to talk or making indirect, ambiguous, or equivocal statements about an intent to exercise the right to remain silent, displaying evasiveness or reluctance to talk, or declining to answer questions is not sufficient to invoke the right to remain silent. Id. When Demarce terminated the questioning on June 27, 2007, he testified that he said, "I have nothing to say to him," got up, and left the room. (Tr. p. 9, Lines 13-22). The Court finds this is not a clear invocation of the right to remain silent but merely reflects that Demarce declined to answer Wind's questions or was reluctant to talk at that time.

**"Scrupulously honored."**

Even if Demarce was able to show that he was in custody and had effectively asserted his right to remain silent, his statements are still admissible because the right to remain silent was scrupulously honored, as required by Michigan v. Mosley, 423 U.S. 96 (1975). The general rule set forth by Mosley is that once a person in custody has exercised his or her right to cut off questioning, admissibility of statements made after that decision is dependent on whether the right to end questioning was "scrupulously honored." Id. at 104. To "scrupulously honor" the right to remain silent does not mean that the person cannot be questioned again without his

6

waiver of that right. In fact, Justice Stewart observed for the Mosley majority that it would be absurd to draw the conclusion that "a person who has invoked his 'right to silence' can never again be subjected to custodial interrogation by any police officer at any time or place on any subject." Id. at 102. The Court noted that such a "permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity." Id.

Three factors determine whether the right of silence was scrupulously honored: 1) whether the initial interrogation was ceased immediately upon the defendant's request, 2) whether a significant period of time had passed and fresh Miranda warnings were given before resuming questioning, and 3) whether the later interrogation is restricted to a crime that was not the subject of the first interrogation. Hatley v. Lockhart, 990 F.2d 1070, 1073-74 (8th Cir. 1993); Mosley, 423 U.S. at 106. Here, it is undisputed that Special Agents Wind and Thompson ceased questioning immediately upon Demarce's request on June 27, 2007. Second, questioning was not resumed for ten days – a "significant period of time," Mosley, 423 U.S. at 106 (holding that more than two hours is a significant period of time) – and it is undisputed that Demarce received and signed a waiver of rights. Third, because the first interrogation did not involve the discussion of any crime, the later interrogation involved a crime that was not the subject of the first interrogation[1]. Therefore, Demarce's invocation, if any, of his right to remain silent was "scrupulously honored."

---

[1] Even if both interrogations involved the same crime, as long as there was "no effort to wear down the defendant's resistance," it is appropriate under Eighth Circuit precedent to conclude that Demarce's right to cut off questioning was scrupulously honored. Hatley, 990 F.2d at 1074 (citing Jackson v. Wyrick, 730 F.2d 1177, 1179 (8th Cir. 1984).

## CONCLUSION

Finding that Demarce was not in custody, he failed to adequately invoke his right to remain silent, and any invocation was scrupulously honored, his motion to suppress is **DENIED.**

**IT IS SO ORDERED.**

Dated this 26th day of November, 2007.

                                                      */s/   Ralph R. Erickson*
                                                    Ralph R. Erickson, District Judge
                                                    United States District Court